**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> v. <br><br> **SEVENTEEN THOUSAND NINE HUNDRED DOLLARS ($17,900) IN UNITED STATES CURRENCY**, <br><br> Defendant, <br><br> **ANGELA RODRIGUEZ and JOYCE COPELAND**, <br><br> Claimants. | Case No. 15-cv-00368 (CRC) |

## MEMORANDUM OPINION

The case of the Samaritan train passenger is nearing its final destination. Interested readers may recall that in March 2014 an Amtrak passenger inadvertently exited a train with a backpack containing $17,900 in cash and turned it over to the police. That selfless act spawned this action, in which the United States seeks forfeiture of the money as proceeds of drug trafficking. Standing in the government's tracks are Angela Rodriquez, whose son Peter was travelling with the backpack on the train, and her domestic partner Joyce Copeland. They filed sworn claims insisting that the cash is lawfully theirs.

The Court briefly derailed the women's claims in August 2016. Applying the summary judgment standard, the Court found that the couple's tall tale of how the money wound up in Peter's backpack so "defie[d] common sense" that no reasonable juror could conclude they owned the money. United States v. $17,900, 200 F. Supp. 3d 132, 140 (D.D.C. 2016). The

Court of Appeals disagreed, however, and reversed the Court's ruling striking the claims. United States v. $17,900, 859 F.3d 1085 (D.C. Cir. 2017). The Circuit held that the claimants' story of ownership, while improbable perhaps, was sufficient to require a jury because it was not "undermined either by other credible evidence, physical impossibility, or other persuasive evidence that the plaintiff has deliberately committed perjury." Id. at 1093 (quoting Chenari v. George Washington University, 847 F.3d 740, 747 (D.C. Cir. 2017)).[1]

On remand, the parties proceeded to conduct additional discovery. And after receiving responses to its document requests, the government has again moved to strike the couple's claims. The claims should be stricken, the government argues, because discovery has revealed evidence that the claimants perjured themselves.

Here's the skinny: The couple's claims to the money rest on their contention that they left their home in New York on February 15, 2014, drove to North Carolina where Peter lived, left the cash with him, and then returned to New York on February 26, 2014. They presented this narrative in sworn responses to special interrogatories issued by the government. The

---

[1] In so holding, the panel wisely cautioned the government (and, implicitly, district courts) against "circumvent[ing] the jury process" by discrediting sworn testimony "because it is out of line with our own lived experiences." 859 F.3d at 1093. To illustrate the point, the court noted that "a jury of laypeople with different and more diverse life experiences" might view the claimants' professed choice to travel with and use sizable amounts of cash rather than a credit card with "considerably less suspicion" than might "the sovereign's judges." Id. See also id. at 1090 (citing official reports that low-income, minority households are less likely to use banking and similar financial services). But just to set the record straight, this Court made clear in its ruling that it considered the very point raised by the Court of Appeals, yet found it inapplicable to the claimants. See 200 F. Supp. 3d at 140 n.8 ("The Court is mindful of Claimants' observation that some lower-income Americans maintain cash because they are effectively shut out of the traditional banking system. At the time of the relevant events, however, both women maintained bank accounts, at least Ms. Copeland was gainfully employed, and both were wealthy enough to have purchased mink coats that they claim to have re-sold for $5,000 each."). On this score at least, the Court was not substituting its own "lived experiences" for those of the claimants; it was applying common sense to a story that never made any.

2

government now has the claimants' bank records. Lo and behold, they show that the women made numerous cash withdrawals and charges to their credit cards in New York City—including purchases at Gucci and Dean & Deluca no less—during the 11-day period they swore they were in North Carolina. Second Mot. Strike Claims, Exs. 6–10. So their story of how Peter got the cash is directly contradicted by the bank records. Persuasive evidence of perjury indeed.

Faced with the government's renewed motion to strike, the claimants' attorneys filed a perfunctory opposition that did not contest the government's evidence. They then moved to withdraw from the case. After a hearing—which neither claimant attended despite the Court's order that at least one of them do so—the Court permitted counsel's withdrawal and provided the claimants nearly a month to supplement their opposition to the government's motion. Hearing no response, the Court deemed any further opposition to be abandoned. See May 25, 2018 Minute Order; Local Civ. R. 7(b), (f).

The end of the line should now be obvious: In light of the government's uncontested evidence that Ms. Rodriquez and Ms. Copeland perjured themselves in their sworn interrogatory responses, the Court finds that they lack standing to challenge forfeiture of the currency and, accordingly, will strike their claims with prejudice. A separate order will follow.

                                                                               CHRISTOPHER R. COOPER
                                                                               United States District Judge

Date: May 31, 2018